With the fourth case of the morning, appeal 23-2567, United States v. Echo Scheidt. We'll begin, Mr. Pennington, with our argument from you. Thank you, Your Honor. Chad Pennington on behalf of the appellant, Mrs. Scheidt. Section 92286 prohibits the false statement in the attempted or direct acquisition of a firearm. Our argument here is that this particular statute and the conduct at issue falls within the ambit of the Second Amendment's plain text. Therefore, it is part of the Bruin analysis and subject to Second Amendment analysis and scrutiny and consequently protection. District Court erred here because it did not conduct the full Bruin analysis. It did not conduct the necessary part two of the analysis, which is the requisite history and tradition analysis. I'd like to say at the beginning, of course, it's certainly possible that 92286 remains constitutional. The argument here is that the court erred because it did not engage the second part. It did not conduct the necessary history and tradition analysis. And part of that argument is that the first step of Bruin is as broad as the Supreme Court intended it to be, which is whether the conduct at issue, if it's subject to the Second Amendment's plain text, then you go to the second part of the Bruin test. Most federal regulations that impede or implicate the right to possess a firearm are going to fall within that second part of the analysis. Most tests, most challenges are going to either rise or fall at that part of the analysis. The same should have been here. The district court should have conducted that analysis and considered whether the statute is rooted in the nation's history and tradition. And it certainly may be. We just never got to that chance. And this is, I would say, fairly symptomatic of what we're dealing with in the post-Bruin landscape at the district court level. The district courts are struggling, applying the test, and they're narrowing the scope of Bruin at the first step without considering specifically what the court said. And that is, this is a broad test. If there's an implication of a Second Amendment vested interest, then you move to the second part of the analysis. The Supreme Court was very clear. Mr. Pennington, is it your argument that the government can't ask for any information before allowing a consumer to purchase a weapon or a handgun? No, Your Honor. I think our position is that the government certainly can ask for information. And so if the government can ask for information, and that's not a violation of the Second Amendment, why is the government's insistence that information be truthful be a violation of the Second Amendment? Your Honor, the question is whether the regulation at issue is rooted in the nation's history and tradition. So the power of the government to ask under the Second Amendment those questions, whether it be an address, whether it be marijuana use, indictment status, whatever it may be, if it's implicating the core Second Amendment rights, and it is, then you move to the second part of the analysis. If the truthfulness requirement, if the right to ask questions is rooted in the nation's history and tradition, then the government certainly contains, they have that authority. But we need to conduct the second part of the analysis to make sure that the statute's rooted in the nation's history and tradition. So you're saying that even a regulation where the government requests basic information, name, address, things of that sort, that even as a precondition to purchasing a handgun, that a regulation like that would have to go to Bruin Step 2? Your Honor, not necessarily that. If the statute at issue is dealing entirely with purchasing, that arguably, not concededly, but arguably would move more into the zone of a commercial regulation, which the Supreme Court has said generally is not falling within the protections of the Second Amendment. The statute at issue here, it does something more than that. It's just not a commercial transaction. It's just not the purchase. It's the general acquisition. It's the transfer of the firearm that renders it a noncommercial regulation. What language do you have in mind in A6? Because as I read A6, A6 makes it a crime to knowingly make a false statement in connection with, and then it has an intent to deceive related to a firearm transaction. But it doesn't impose a possession or acquisition limitation by its terms. Right? Your Honor, I believe that the statute regulates the acquisition of the firearm. I thought it makes it a crime to knowingly make any false or fictitious oral statement. That's the statement portion, Your Honor. The subsequent language in the statute, my understanding, is that it relates to attempt or direct acquisition of the firearm under Chapter 44. I mean, it just very much by its terms seems to be, as we said in Holden, a provision of the Federal Criminal Code that is getting at the veracity of information that's provided. Your Honor, I agree. I think that's part of what the statute accomplishes. I think that's part of what the statute does. But it also, in the first instance, limits the right to possess a firearm. So it has two functions, certainly. It's getting at the veracity, the credibility of the person who seeks to possess the firearm. But because it relates to the attempted acquisition or possession of the firearm, that's what brings it within the scope of Bruin's first part. And, Your Honor, with respect to Holden and whether Holden would or would not be controlling here, it's a different kind of attack raised here that was raised in Holden. In Holden, the challenger raised the challenge to 922N's constitutionality. The argument was there was indictment status is not a permissible regulation under the Second Amendment in terms of prohibiting firearm possession. So the statute there was to the challenge there to the statute was to the underlying statute, 922N. It was not a direct challenge, as is here, to 922A6's argument or 9226's constitutionality. So it's a different kind of challenge. It's a little abstract, but it is different in the sense that we're not saying, for example, in Ms. Shade's case, well, 922G3 is confirmed. That's not the challenge. We're saying that when Congress attempts to regulate firearm possession or firearm acquisition, that regulation brings it within the scope of Bruin's first step, whether it's constitutional or not. That hinges on the second part. But by asking someone to provide information before they can possess a firearm, when they already have an existing right to possess the firearm, that itself is a restriction in the first instance. And that brings it within the scope of the Second Amendment. Again, the prayer here is not necessarily that the statute needs to be found constitutional by this court. It's just that the district court erred because it didn't conduct that history and tradition analysis. I'd also like to just briefly address the government's argument about the social utilities of firearm regulations, about their benefit. There's no doubt that regulation of firearms has certain social benefits and possession of firearms may have certain social costs, certainly as it relates to criminality. But the Supreme Court was very clear in Bruin that we don't engage in that type of balancing. That's not a legitimate consideration within the Second Amendment context. So the legitimacy of the purpose or the utility of 922-86, that's an immaterial analysis and consideration here. And if I may, I'd like to reserve the remainder of my time for rebuttal. You may. Thank you, Mr. Pennington. Mr. Holler will now move to you for argument on behalf of the government. Thank you. Good morning, Your Honors, and may it please the Court. The seeking or providing of information does not infringe anyone's right to keep and bear arms. The Second Amendment's plain text talks about whether the right to keep and bear arms is infringed, and nothing in the text of the statute, 922-86, itself infringes anyone's right to keep or bear arms. That statute talks about making a false statement in connection with the acquisition or attempted acquisition of a firearm. In this particular case, Ms. Scheidt acquired five firearms. The government did not interfere in any way with her right to keep or bear arms. She kept the arms as long as she wanted them, and then she disposed of them. The underlying statutes, which my opponent steadfastly has insisted he is not challenging, are the ones that could have prohibited her from possessing arms, her refusal to disclose her true address and 922-G3. I mean, isn't that the key to it, in your view? It's the in connection with the acquisition, right? So it's not a false statement in connection with any commercial transaction. No, the transaction is with respect to the acquisition of a firearm, but the substantive limitation or the substantive prohibition imposed by A-6 is truth-telling. In other words, A-6 is not like G-1. No, the statute does not. G-1 is about, you know, can I possess? And so you'd say, well, G-1 is definitely subject to a Bruin analysis, and stay tuned. We'll figure out how that comes out. Sure, and G-3 would be subject to a Bruin analysis. And every G, G-8 up in the Supreme Court and all the other ones that you're going to get to review over the years, that's fine. But the defendant has steadfastly said, I am not challenging G-3. I'm not challenging anything but A-6. A-6 doesn't interfere with anybody's right to keep or bear arms. By its terms. Right. Yeah, it's all about the provision of false information. Right. So this case is controlled by Holden. Holden was trying to make the narrower argument. I think the defendant in Holden accepted that proposition and said, but when the specific provision that I'm challenging, the underlying prohibition, then we have a problem. And the court in Holden said, no, that's not how this works. Then you get into all of the false statement cases that say, if you want to challenge that, the way you do that is you either tell the truth, get a denial, and sue the government, like I think may have happened in Atkinson, or you refuse to fill out the form and get a denial and sue the government. But what you don't do is you don't lie. And we can punish you for lying even if we can't punish you for the underlying conduct. But even in terms of my opponent's framework analysis, this claim fails at step one. Regardless, I think even the Supreme Court has made clear you can ask questions. I mean, the court in Bruin said we're not casting any doubt on permit requirements. I mean, I'm going to have to disclose my name and presumably my address in order to get a firearm permit, even if the government must issue the permit without any kind of additional regulations. The Supreme Court in Bruin also said background checks are okay. I don't know how one can do a background check if one can't get basic information like one's name or one's address. So, you know, to the extent, as I sort of tried to state in the brief as well, that my opponent's argument is I shouldn't have lost at step one, I should have lost at step two, ultimately the judgment is still affirmed. But that said, Chief Judge Brady did this correct. This claim does fail at Bruin step one. Yeah, because of the word infringe in the text of the amendment. Right. My opponent essentially wants to focus on the word firearm and say any time you see a statute with the word, circle the word firearm, Bruin step one is checked. Now the government has to go back to 1791 or 1868 and start pulling out history. And there are going to be many cases where we're going to have to do that. I don't dispute that. But this is not one of them. If the court has no further questions, we would ask that the judgment be affirmed. Thank you, Mr. Holler. Mr. Pennington, we'll move now back to you for a rebuttal argument. Thank you, Your Honors. Our argument is not any time you see the word firearm in a federal statute that Bruin necessarily attaches or the Second Amendment test attaches. That's not the argument. It's when the statute invokes the term firearm and it attempts to restrict the possession of the firearm, then you are within the ambit of the court. How does A6 do that, though? Just walk me through that. I mean, I've got the full text in front of me. Okay. Sure. The way it does, Your Honor, I understand your inclination to find the word connection, brings it outside of the scope of the Second Amendment. But the argument, Your Honor, is that by requiring that information be provided before the firearm may be possessed, before it may be required, even if it substantively relates to truthfulness, it's still, at least in part, a possession restriction. It restricts the right to possess the firearm. Now, where do you get that from? We get that from the plain language of the statute, Your Honor, and we also get it from the facts of the case. Now, it is true that Ms. Shade, she did obtain the firearms at issue, but what we're saying is you start with the presumption in the Second Amendment framework with the person has the right. It's vested. She goes into a dealership. She goes into a firearm storefront, and she attempts to possess the firearm. The moment they're asking her for information before she can possess the firearm, that's the restriction in and of itself. That's an ex ante information request. Oh, the request for the information? Yes, Your Honor. The request for the information, even how slight, that that can be an infringement of the Second Amendment if the request relates to the possession of the firearm. It's not general questions. It's are the questions targeted to implicate the right to possess the firearm, to transfer the firearm. That's what brings it within the scope of the Second Amendment, Your Honor. So you would say in a hypothetical where you don't have the federal ATF form at issue, but a state passes a law that says you need to present a driver's license when you show up to acquire a firearm, that the statute requiring certain information to be provided, a driver's license, is a restriction on the right to bear arms, and therefore, you have to go through Prong 1 and Prong 2 at Bruin. You'd have to go through both Prongs, that's correct, Your Honor. If the restriction is limiting the right to possess the firearm, then that's exactly what the argument is. Yeah, so you're, I mean, okay, all right, I get it. Certainly. And for those reasons, we respectfully ask that this court reverse the district court and remand to Bruin second part. Thank you very much, Mr. Paynes, and thank you very much, Mr. Holler. The case is taken under advisement.